```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| SHAWN COLEMAN,<br><br>               Petitioner,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>               Respondent. | HONORABLE JEROME B. SIMANDLE<br><br>    Civil Action<br>    No. 14-3555 (JBS)<br><br>    [Crim. No. 10-484]<br><br>         **OPINION** |

APPEARANCES:

Shawn Coleman
No. 20048-050
FCI Fairton
P.O. Box 1000
Cumberland, MD 21501
     Petitioner, pro se

Matthew T. Smith, AUSA
Robert Stephen Stigall, AUSA
Office of the U.S. Attorney
District of New Jersey
401 Market Street
P.O. Box 2098
Camden, NJ 08101
     Attorneys for Respondent

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

     Petitioner Shawn Coleman brings this petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. [Docket Item 1.] On September 14, 2011, a jury convicted Petitioner of one count of unlawful possession of a firearm by a

convicted felon in violation of 18 U.S.C. § 922(g), and on January 13, 2012, this Court sentenced Petitioner to 108 months imprisonment followed by three years of supervised release. [Cr. Docket Item 44.][1] Petitioner now moves for the Court to vacate, set aside or correct his sentence based on his claim of ineffective assistance of counsel in violation of his Sixth Amendment rights. Petitioner's ineffective assistance claim rests on four grounds: (1) failure of counsel to investigate facts surrounding Petitioner's statement to police immediately following his arrest; (2) failure of counsel to properly seek suppression of evidence; (3) failure of counsel to properly negotiate a plea deal and advise Petitioner of his sentencing exposure if convicted; and (4) failure of counsel to impeach a government witness with evidence of police misconduct and to permit Petitioner to testify. For the reasons discussed below, the Court will deny the Petition.

## II.  BACKGROUND

This case arises from Petitioner's arrest in the early morning hours of November 5, 2009. Around 2:00 A.M. that morning, the Lindenwold, New Jersey Police Department received a telephone call from a resident of the Pine Ridge Apartments complaining about a motor vehicle parked with its lights shining

---

[1] The Court will refer to items on Petitioner's criminal docket as "Cr. Docket Item ___."

in the apartment's window. Officers Arthur W. Hall and George Przybylski responded to the call. Upon arrival, the officers observed that the vehicle was running with its high beams illuminated. They saw a man, who was later identified as Mr. Coleman, in the driver's seat, with the radio playing inside the vehicle. Noting no signs of movement or breathing, the officers attempted to rouse Coleman by shining their flashlights and hollering. Believing Coleman was intoxicated or experiencing a medical issue, the officers concluded that there was an emergency that required them to enter the vehicle.

    The officers found the driver's side and passenger side doors unlocked and entered the vehicle. Officer Hall observed in plain view the butt of a handgun protruding from the center console. Officer Przybylski removed Coleman from the vehicle and placed him in handcuffs. Hall asked him why he was carrying the gun and Coleman stated that it was for protection. The officers escorted Coleman to Przybylski's patrol car, advised him that he was being detained for the firearm but did not administer Miranda warnings at that time. The officers spent an additional 10-30 minutes searching the vehicle before transporting him to the station. Thereafter, Coleman made two allegedly uncounseled statements – one in the patrol car during transport and the other at the station after being Mirandized - which he later sought to suppress.

By criminal complaint filed January 6, 2010, Petitioner was charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). [Cr. Docket Item 1.] Petitioner was indicted on July 21, 2010 [Cr. Docket Item 11] and arraigned on July 27, 2010 [Cr. Docket Item 12]. On August 25, 2010, Petitioner's counsel, M. W. Pinsky, Esq., filed a motion to suppress the firearm and several of Petitioner's statements to police. [Cr. Docket Item 14.] The Government opposed Petitioner's motion [Cr. Docket Item 15] and the Court conducted a motion hearing on January 10, 2011 to address Petitioner's motion and a motion by the Government to admit the facts of Petitioner's prior federal conviction under Fed. R. Evid. 404(b). [Cr. Docket Item 16.] The Court ordered and received from both parties supplemental briefing on the admissibility of two statements made in the course of Petitioner's arrest which the Government intended to use at trial.[2] [Cr. Docket Items 23 & 24.] By Opinion and Order entered July 1, 2011, the Court denied Petitioner's motion to suppress and deferred decision on the Government's motion regarding 404(b) evidence. [Cr. Docket Items 30 & 31.] A three-day jury

---

[2] The Government represented at the motion hearing that it would not rely on Petitioner's statement to police regarding why he had a gun. (Mot. Hrg. at 139:5-8.)

4

trial commenced on September 12, 2011, and on September 14, 2011 the jury convicted Petitioner of violating 18 U.S.C. § 922(g).

On January 13, 2012, this Court sentenced Petitioner to 108 months imprisonment and three years of supervised release. [Cr. Docket Item 44.]

Petitioner appealed and the Third Circuit affirmed the conviction and sentence of this Court on November 20, 2013. [Cr. Docket Item 54.] The Court of Appeals found that any error in denying Petitioner's motion to suppress his post-arrest statements was harmless, that the Government did not violate its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and that the Court's instruction cured any prejudice caused by the prosecutor's statements during examination of a Government witness. See United States v. Coleman, 545 F. App'x 156, 159 (3d Cir. 2013).

On June 4, 2014, Petitioner timely filed the instant pro se Petition to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. [Docket Item 1.] The Court gave Petitioner due notice of his right to amend his petition to include any additional grounds within 30 days under United States v. Miller, 197 F.3d 644 (3d Cir. 1999) on June 9, 2014. On August 12, 2014, the Court ordered the Government to file an answer to the Petition. [Docket Item 4.] After receiving an extension of time

to file its answer, the Government responded to the Petition. [Docket Item 7.] Petitioner then filed a reply.[3] [Docket Item 8.]

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 2255(a), a federal prisoner may move to vacate, set aside or correct a sentence on the ground that the sentence was imposed in violation of the Constitution or federal law, the sentencing court was without jurisdiction, or the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. The district court shall grant a hearing to determine the issues and make findings of fact and conclusions of law. 28 U.S.C. § 2255(b). However, if the motion, files and records of the case conclusively show that the prisoner is not entitled to relief, the petition will be denied. § 2255(b); see also United States v. McCoy, 410 F.3d 124, 131-32 (3d Cir. 2005) (holding a district court must grant an evidentiary hearing unless the record before it conclusively showed the petitioner was not entitled to relief). A hearing

---

[3] Petitioner's reply raises a number of new arguments in support of his petition. The Court need not address these arguments raised for the first time in response to the Government's opposition. Gleason v. Norwest Mortgage, Inc., 253 F. App'x 198, 202 (3d Cir. 2007) ("Although [Defendant] is entitled to use its reply brief to clarify the issues before us, it may not add new issues for consideration."); United States v. Martin, 454 F. Supp. 2d 278, 281 (E.D. Pa. 2006) (declining to address issues raised for the first time in petitioner's reply to Government's opposition to § 2255). Nevertheless, the Court will discuss the arguments in Petitioner's reply where appropriate.

6

need not be held if the petition raises no legally cognizable claim, or if the factual matters raised by the petition may be resolved through the district court's review of the motions and the records in the case, or, in some circumstances, if the court, in its discretion, finds the movant's claims to be too vague, conclusory or palpably incredible. United States v. Costanzo, 625 F.2d 465, 470 (3d Cir. 1980) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)).

**IV. DISCUSSION**

Petitioner argues that he was deprived of the effective assistance of counsel in violation of the Sixth Amendment to the U.S. Constitution. "To establish ineffective assistance of counsel a defendant must show both deficient performance by counsel and prejudice." Premo v. Moore, 131 S. Ct. 733, 739 (2011). A petitioner must show (1) that "'counsel's representation fell below an objective standard of reasonableness,'" and (2) "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (citing Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)); see also Strickland v. Washington, 466 U.S. 668, 687-88 (1984). "Judicial scrutiny of counsel's performance must be highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."

7

Id. at 689. The Third Circuit has cautioned that it is "only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999) (quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Petitioner asserts four bases for his ineffective assistance of counsel claim, and the Court will address each in turn.

### 1. Failure to investigate facts surrounding Petitioner's first statement to police

Petitioner asserts that trial counsel failed to properly investigate the facts surrounding his statement to police immediately after the officers woke him and observed a gun in the console of the car in which he was sleeping. Petitioner contends that if counsel had properly investigated, he would have learned that the officer asked "why would you carry a gun?" not "why are you carrying a gun?" Moreover, Petitioner alleges that counsel "failed to inquire as to how, after being aroused from a comatose state, that I was, according to police, so alert coherant [sic] that I was able to immediately admit to having knowledge of a firearm." (Petition at 6.)

Petitioner's argument fails to satisfy either prong of Strickland. Petitioner has not explained how a failure to

8

investigate an insignificant discrepancy in the officer's question falls below an objective standard of reasonableness. As the government notes, any cross-examination of the officer regarding his questioning of Petitioner could have provided an opportunity for the Government to admit the statement which it did not intend to rely upon. Importantly, Petitioner cannot show prejudice from failure to investigate a statement that the Government agreed not to use, and indeed, did not introduce at trial. (Mot. Hrg. at 139:5-8; United States v. Coleman, Crim. 10-484 (JBS), 2011 U.S. Dist. LEXIS 71272, *5 n.1 (D.N.J. July 1, 2011) ("The Government does not seek to introduce these statements made in response to custodial interrogation without Miranda warnings or any applicable exception to Miranda requirements."). To the extent Petitioner contends that counsel failed to challenge the legality of the search and seizure which culminated in his arrest, this argument also lacks merit because such a challenge was the very basis of counsel's motion to suppress. The Court fully addressed the legality of the search and seizure in addressing Petitioner's suppression motion. Id. at *7-11. Therefore, Petitioner's argument that counsel failed to investigate the facts surrounding Petitioner's initial statement to police is meritless.[4]

---

[4] In his reply, Petitioner argues that counsel failed to challenge Petitioner's statement at the station: "I can't

## 2. Failure to properly seek suppression of evidence

Petitioner's second argument fails for the same reasons. He contends that counsel "failed to object or make a colorful argument when the arresting officers did not follow the proper procedures in arresting me without establishing a probable cause to arrest me." (Petition at 7.) Moreover, counsel, upon proper investigation, would have discovered that the doors were unlocked and one was ajar, permitting the inference that someone could have placed the gun in the console while Petitioner was asleep or unconscious.

As discussed above, defense counsel filed a motion to suppress contesting the basis for the police entering and searching the vehicle in which Petitioner was found. Counsel sought suppression of the firearm found in the vehicle and

---

believe I left the gun there. I'm not having a good night. The Yankees lost and now this." Petitioner contends that "[d]efense counsel totally failed to challenge these statements at the suppression hearing or a [sic] trial." (Reply [Docket Item 8] at 1-2.) This argument like Petitioner's argument directed at his initial statement to the officers is completely unsupported by the record. Petitioner's suppression motion explicitly sought suppression of this statement. Finding that it was voluntary and admissible, the Court denied Petitioner's suppression motion as to his station house statement. Coleman, 2011 U.S. Dist. LEXIS 71272, *19-21. Additionally, counsel cross-examined Officer Hall at trial as to whether it was reasonable to believe that Petitioner made statements about a Yankees game in November given the time of year and the typical playoff schedule. (Trial Tr. 43:2-47:4; 56:10-19; 83:9-14.) Accordingly, like Coleman's initial statement to police discussed above, his argument that counsel failed to challenge this statement is directly contradicted by the record.

Petitioner's statements to the police during the course of his arrest. Counsel argued that the officers lacked justification for entering and searching the vehicle and that the firearm was not in plain view. Additionally, counsel thoroughly cross-examined the police officers during the suppression hearing and raised additional arguments in supplemental briefing invited by the Court. Although counsel's attempts to suppress certain evidence as the fruit of an illegal search were unsuccessful, the right of effective assistance of counsel does not guarantee success. Strickland v. Washington, 466 U.S. 668, 699 (1984); Kokoraleis v. Gilmore, 131 F.3d 692, 696 (7th Cir. 1997) ("The sixth amendment does not guarantee success or entitle defendants to the best available counsel or the most prudent strategies."). Counsel's efforts to challenge the validity of the search and seizure were extensive and clearly not unreasonable or below the prevailing norms.

   Petitioner's argument regarding the unlocked doors is equally unpersuasive. There was consistent evidence at the suppression hearing and at trial that the doors were unlocked. In fact, both officers testified that the doors were unlocked, which counsel noted during his closing argument to the jury. (Trial Tr. at 452 ("How can you be expected to find that he had the intent to control just by the fact that he's sitting in the car and there's a gun near him when you don't know whether

11

anyone else was ever in the car?"); 452-53 ("That doesn't mean anyone else wasn't in the car. That doesn't mean the gun wasn't in the car when he got in the car. If it was in the car, did he have the mental wherewithal to notice it was in the car?").) Counsel thus raised the phantom-intruder argument and it did not raise a reasonable doubt in any juror's mind. Accordingly, Petitioner cannot successfully argue that counsel's performance was constitutionally deficient or that he was prejudiced as a result merely because counsel's argument to the jury on this point was unsuccessful.

### 3. Failure to properly negotiate a plea deal and advise Petitioner of his sentencing exposure

Petitioner next argues that counsel failed to negotiate a plea deal and improperly advised him that it would be best to go to trial. Petitioner maintains that counsel discussed the possibility of pleading "to the offense of § 922(d) and . . . I could have . . . got a sentence of 5 years or less," yet he proceeded to trial and received a longer sentence. (Petition at 9.)

Although defense counsel has a duty to communicate formal plea offers to the accused, Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012), Petitioner's argument is contradicted by the facts of his case. Defense counsel certifies that he never received a written plea agreement from the Government capping Petitioner's

12

exposure at five years' imprisonment. (Pinsky Decl. [Docket Item XX] ¶ 7(b).) Counsel also explains that he discussed with Petitioner how the Sentencing Guidelines work, reviewed his criminal history with him, and advised Petitioner that he was facing up to ten years' imprisonment upon conviction. (Id. ¶ 6.) Petitioner offers nothing beyond his bare allegations to undermine counsel's statement that the Government never offered a plea deal that would result in a sentence of five years. Further, the Government notes that no such deal could have been conveyed under the statute cited by Petitioner because he was not charged with a violation of 18 U.S.C. § 922(d). "It is, of course, true that defendants have 'no right to be offered a plea . . . nor a federal right that the judge accept it.'" Lafler v. Cooper, 132 S. Ct. 1376, 1387 (2012) (quoting Frye, 132 S. Ct. at 1410). Therefore, the record before the Court is sufficient to conclude that defense counsel did not fail to communicate a formal plea offer to Petitioner that would have capped his term of imprisonment at five years. As such, there is no basis to find that counsel was ineffective in plea negotiations.[5]

---

[5] Petitioner in his reply claims that counsel also failed to pursue a plea deal under Rule 11(c)(1)(C), Fed. R. Crim. P. Petitioner attaches a letter purportedly sent to defense counsel dated September 30, 2010 which states, "The ONLY WAY THAT I'D ACCEPT A PLEA, [sic] WOULD BE WITH THE RULE 11 C(1)(c) [sic] firmly in place . . ." Where a petitioner contends that counsel's ineffectiveness caused him or her to reject a plea offer and stand trial, petitioner "must show that but for the

### 4. Failure to impeach a government witness and to permit Petitioner to testify

The final basis for Petitioner's ineffectiveness claim – that counsel failed to impeach Officer Pryzbylski or allow Petitioner to testify at trial – is factually inaccurate and unsupported by the record.

Counsel's alleged failure to impeach Officer Pryzbylski is belied by counsel's vigorous cross-examination of Officer Pryzbylski at the suppression hearing and at trial. (Mot. Hrg.

---

ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 132 S. Ct. 1376, 1385 (2012). In the present case, Petitioner's bare assertion that he "could have got less time if [he] pled out before trial or at the suppression hearing" is insufficient to warrant an evidentiary hearing and well-short of establishing ineffective assistance of counsel. Petitioner has proffered no evidence to support a finding that the Government would have made a Rule 11(c)(1)(C) offer, much less a reasonable probability that the plea offer would have been presented to the court. Nor does Petitioner specify a sentence he would have accepted which is necessary for the Court to conclude that it would have been less severe than the punishment imposed. Unlike United States v. Mohammad, 999 F. Supp. 1198 (N.D. Ill. 1998), upon which Petitioner relies, counsel's conduct regarding plea bargaining in this case does not suggest unfamiliarity with the case or lack of preparation. Instead, a letter from counsel to Petitioner dated May 12, 2010, also attached to Petitioner's reply, documents counsel's efforts to engage in meaningful plea discussions with the Government. Therefore, the Court rejects Petitioner's argument regarding counsel's failure to pursue a plea deal under Rule 11(c)(1)(C) as untimely and unpersuasive.

at 94-114; Trial Tr. at 347-380.) Counsel attempted to impeach the officer's credibility and suggest inadequate investigation into Petitioner's mental and physical condition during the course of his arrest. Petitioner's initial filing fails to identify with any specificity what evidence of "police misconduct" counsel failed to introduce. The Government represents that it did not uncover any evidence of police misconduct when identifying potential Giglio material before trial.

Petitioner appends to his reply brief two documents which appear to be human resources memoranda from Officer Pryzbylski's time at Kean University concluding that he acted inappropriately on two occasions. On the first occasion, the complainant approached Officer Pryzbylski while he was assisting with a motor vehicle stop. The individual asked if there was an accident and Officer Pryzbylski repeatedly advised him to step away. The memorandum indicates that Officer Pryzbylski acted inappropriately in his interaction with the complainant and recommended a verbal reprimand. On the second occasion, Officer Pryzbylski was off-duty in his personal vehicle with his four year old daughter in the backseat when a snowball came through the rear window and hit her in the face. Officer Pryzbylski exited his vehicle and ordered two juveniles to get down on the ground at gun point. According to the memorandum, the Plainfield

15

Police Department and the Union County Prosecutor's Office investigated but decided not to pursue criminal charges against Officer Pryzbylski. The memorandum found no violation of police policy and recommended remedial training on use of force and firearms.

Petitioner argues in his reply that these incidents suggest that Officer Pryzbylski is "ok with bending the law and protocol to serve his purpose." (Reply at 3.) Petitioner contends that Officers Pryzbylski and Hall improperly questioned him prior to reciting his Miranda rights.

Neither of these incidents concern custodial interrogation, nor did they contain findings that Pryzbylski was deceptive or dishonest, and therefore they do not bring his credibility into question. In all likelihood, they would not have been a permissible basis for cross-examination in this case because they do not involve statements about this case or other custodial interrogations or a pattern of relevant misconduct. Petitioner's argument regarding these incidents of alleged police misconduct by Officer Pryzbylski thus appears to be another attempt to relitigate his unsuccessful suppression motion. To the extent Petitioner argues that his counsel failed to impeach Officer Pryzbylski with these incidents of misconduct, Petitioner is unable to show prejudice. His counsel vigorously litigated the motion to suppress Petitioner's three

16

incriminating statements. Counsel repeatedly questioned Officers Pryzbylski and Hall during the during the suppression hearing and at trial about when Petitioner was Mirandized. Petitioner has not identified any source of prejudice as the result of counsel's allegedly deficient impeachment of Officer Pryzbylski beyond the admission of certain statements. It is unclear how cross-examination regarding the two incidents Petitioner now identifies could have affected the admissibility of these statements or the outcome at trial. Petitioner's allegations in his § 2255 motion, and his belated attempt to substantiate them in his reply, ignore counsel's reasonable attempt to undermine Officer Pryzbylski's credibility and his robust efforts to challenge the propriety of the officers' questioning of Petitioner in the course of his arrest. Therefore, Petitioner has not shown that he was deprived of his constitutional right to counsel by counsel's alleged failure to impeach Office Pryzbylski through prior misconduct.

Similarly, Petitioner's argument that counsel failed to follow the defense strategy permitting him to testify is unsupported by the record. Counsel attests that Petitioner at no time advised counsel that he wished to testify in his own defense. (Pinksy Decl. ¶ 7(a).) The Court advised Petitioner of his right to testify at both the suppression hearing and at trial. (Mot. Hrg. 135:15-136:1; Trial Tr. 397:15-398:10.) The

Court was fully satisfied with Mr. Pinsky's representations that he had discussed with Coleman the decision of whether to testify or not testify, that Coleman knew of his right to testify and made a personal decision not to testify, and that Coleman's waiver of the right to testify at trial was knowing and voluntary. (Trial Tr. 397:15-398:4.) Petitioner Coleman at trial confirmed that he heard what Mr. Pinksy said and that it was true and that he had no questions about this right to testify or his right not to testify. (Id. at 398:5-10.) The Court accepted his waiver. (Id. at 398:11-14.) Thus, the trial record flatly contradicts Petitioner's claim that his attorney kept him from testifying at trial.

Moreover, Petitioner is unable to show how he was prejudiced by his failure to testify. He suggests that the outcome would have been different "had the jury been made aware that I had no recollection of ever speaking or talking to the police due to highly intoxicated and drug induce[d] state." (Petition at 10.) As discussed above, counsel during his closing argument repeatedly raised the issue of Petitioner's mental state and alertness. (Trial Tr. 444:14-20; 446:7-447:4; 452:21-453:5.) Accordingly, Petitioner has failed to show how he was prejudiced by counsel's alleged failure to permit him to testify as to his mental state during his encounter with police.

18

Therefore, the Court rejects Petitioner's final ground for his claim for ineffective assistance of counsel.

**V.  CONCLUSION**

For the reasons explained above, the Court finds that no evidentiary hearing is necessary and the Court will deny the Petition to vacate, set aside or correct his sentence. An accompanying Order will be entered.

**VI. CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c)(1)(B), "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a proceeding under section 2255." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy that standard, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, jurists of reason could not disagree with the Court's resolution of Petitioner's constitutional claims. Under the

standard recited above, the Court will deny a certificate of appealability.

**December 30, 2014**             **s/ Jerome B. Simandle**
Date                               JEROME B. SIMANDLE
                                     Chief U.S. District Judge